UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DEMARCUS FINLEY**, | 2:17-cv-11976-TGB |
| Petitioner, | **OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*** |
| vs. | |
| **MARK MCCULLICK**, | |
| Respondent. | |

Petitioner Demarcus Finley confined at the Chippewa Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, Petitioner challenges his conviction for first-degree murder, Mich. Comp. Laws § 750.316; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b; and possession with intent to deliver marijuana, Mich. Comp. Laws § 333.7401(2)(d)(iii). For the reasons that follow, the petition for a writ of habeas corpus will be **DENIED WITH PREJUDICE**.

## I. Background

Petitioner was convicted by a jury in the Kalamazoo County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review

1

pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise out of the murder of Lionel Lopez on August 23, 2013 near the intersection of Stockbridge Avenue and Race Street in Kalamazoo, Michigan. Witnesses testified to a fight involving several people at that location. Vianka Walton and Jacinta Gallegos, the victim's brother and niece, respectively, testified that the fight began when one of the men walking with defendant threw a beer can through the window of Walton's car, striking Gallegos in the mouth. Walton stopped her car and Lopez began fighting one of the men accompanying defendant. Walton testified that two other men accompanying defendant joined the fight. Gallegos also joined the altercation. Walton testified that defendant did not join the fight, but that she saw defendant walk over to the fight and pull a gun from his pants. He put the gun to Lopez's neck and shot Lopez. Gallegos also testified that she saw defendant walking towards the fight. Gallegos heard a gunshot, and turned to see Lopez lying on the ground, blood rushing from his neck. Gallegos heard Walton screaming that "it was Dreads, it was Dreads." Both Walton and Gallegos testified that defendant was wearing a red T-shirt and black shorts. Jessica Moreno, who witnessed the shooting from her car, testified that the shooter had long hair that was in either braids or dreadlocks, although she described the shooter as wearing a white t-shirt. Anna Brabant, who witnessed the fight from her apartment window, heard a gunshot and testified that the person who fired the gun was wearing a red shirt and appeared to African–American, although she did not recall anything unique about his hair.
>
> Walton testified that she knew defendant because of her "kid's father['s] sister." Gallegos testified that defendant was her "aunt's baby daddy sister's baby daddy." Walton and Gallegos knew that defendant had a twin, whose name was Demetrius. Walton testified that defendant and Demetrius looked alike

but that Demetrius "just don't have hair." Demetrius, whom Walton had seen a couple days earlier, had a "fade" haircut, i.e., short hair. Gallegos testified that defendant and Demetrius "kind of, [but] not really" looked like each other. The big difference between them was that Demetrius had a fade haircut and defendant had dreadlocks. According to Walton, defendant's nickname on the street was "Dreads."

Sergeant Anthony Morgan testified that he learned approximately 30 minutes after the dispatch call that defendant was a possible suspect and that a possible location for defendant was an apartment at 530 Denway. When Morgan and Officer Joseph Hutson arrived at the apartment, which was a 5– to 10–minute drive from the crime scene, Byron Daniels, defendant's stepfather, informed them that defendant had just arrived. Morgan found defendant in a bedroom, and it appeared that defendant was going to leave the apartment through a window. Defendant was wearing a pair of black shorts underneath a pair of jeans. In a search of the apartment, Hutson found a .38–caliber revolver containing one fired cartridge and several unfired cartridges. When defendant was arrested for Lopez's murder, 49 grams of marijuana were found on him.

Dr. Michael Markey, the pathologist who performed an autopsy on Lopez, testified that Lopez had suffered one gunshot wound in the "left facial, upper neck region," where the bullet entered the left side of the face and travelled through to the right shoulder, piercing the larynx, thyroid, and jugular vein. Although the bullet recovered from Lopez's shoulder lacked "individual characteristics," and Jeff Crump, an expert in firearms identification, could not determine whether the bullet fired at the victim had been fired from the revolver located in defendant's apartment, Crump could not eliminate the possibility that the revolver had fired the bullet. The bullet had the same "class characteristics" as test shots from the revolver. In addition, the bullet was the same type of ammunition as the unfired cartridges in the revolver.

Detective Gary Gaudard testified that, according to the report he received from the Michigan State Police, a match was found between defendant's DNA and DNA from a swab of the revolver. Gaudard also testified that Demetrius, who had advised a detective that he was at work at the time of the killing and who had a fade haircut, was eliminated as a suspect in the murder of Lopez.

*People v. Finley*, No. 323661, 2016 WL 146314, at *1-2 (Mich. App. 2016).

Petitioner's conviction was affirmed but the case was remanded to the trial court to correct the judgment of sentence. *Id.*, *lv. den.* 890 N.W.2d 355 (2017).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.  [Finley's] murder and weapons convictions fail under the sufficiency of the evidence test and a directed verdict of acquittal should be entered. U.S. Const. Am. XIV.

II. The trial court denied Finley a fair trial when, over trial counsel's objection, the court admitted a gruesome autopsy photo that was far more prejudicial than probative. A new trial is warranted. U.S. Const. Am. XIV.

III. The prosecution improperly shifted the burden of proof on the defense during their closing argument. This is prosecutor error which denied [Finley] his right to a fair trial even absent an objection. A new trial is required.

IV. In the felony information, [Finley's] felony firearm charges (Count II and IV) are attached to the murder and felon-in possession charges (Counts I and III) but not the drug charge (Count V). This matter should be remanded for correction of the judgment of sentence so that Counts II and IV run concurrent with Count V, not consecutive.

4

V. [Finley's] conviction[s] and sentence[s] must be reversed because [his] constitutional right to an impartial jury was violated when a juror was untruthful during voir dire and when [Finley] would have excused that juror if that juror had been truthful about knowing the prosecution[']s witness. Additionally[,] trial counsel was ineffective for failing to object and for failing to move for a mistrial. U.S. const. Am. VI; XIV.

VI. The United States and Michigan constitutions guar[an]tee a criminal defendant's right to the effective assistance of counsel[.] Finley's defense counsel was constitutionally deficient when he failed to investigate and present an important defense pertaining to identification, and these deficiencies prejudiced Finley.

VII. [Finley] was denied his Sixth Amendment right to a fair trial by the introduction of hearsay statements by a testifying witness that incriminated the defendant. [Finley] was also denied effective assistance of counsel, where counsel failed to object to hearsay. U.S. Const. AM. VI, XIV.

VIII. Finley was denied the effective assistance of trial counsel and the right to present a defense when trial counsel failed to elicit testimony and utilize evidence, which would have impeached the testimony of the State's key witness.

IX. The trial court violated [Finley's] due process rights by joining the controlled substance-delivery/manufacture marijuana charge and murder, first degree charge in a single trial, where [Finley] did readily and willingly admitted to possession of the marijuana. Additionally[,] trial counsel was ineffective in failing to motion for a severance of charges or obtaining a reasonable plea considering [Finley's] admission of guilt upon the initial investigation, the joinder resulted in unfair prejudice.

## II.  Standard of Review

Section 2254(d) of Title 28 of the United States Code, as amended

by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),

imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim–
>> (1)   resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>> (2)   resulted in a decision that was based on an
>> unreasonable determination of the facts in light of
>> the evidence presented in the State court
>> proceeding.

A decision of a state court is "contrary to" clearly established federal

law if the state court arrives at a conclusion opposite to that reached by

the Supreme Court on a question of law or if the state court decides a

case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a

prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ

simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court

decision to be reasonable. *See Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).

### III. Discussion

### A. Claim #1. The sufficiency of evidence claim.

Petitioner first claims that there was insufficient evidence at trial to establish his identity as the shooter.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

A federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. A federal court may grant habeas relief only if the state court decision was an

8

objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Under Michigan law, "[T]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147,

150 (6th Cir. 2003) (citing *People v. Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656 (1970)).

> The Michigan Court of Appeals rejected this claim as follows: Two eyewitnesses (Walton and Gallegos) who were familiar with both defendant and his twin brother identified defendant as the person who had shot Lopez. Further, although there were some minor discrepancies between Moreno's and Brabant's testimony, Moreno did testify that the shooter had long hair that was in either braids or dreadlocks. Additionally, when police arrived at defendant's home, his stepfather told them that defendant had just arrived, and it appeared to Morgan that defendant planned to leave through a window. Evidence of flight, including running from the police, may indicate a consciousness of guilt. *People v. Coleman*, 210 Mich.App 1, 4; 532 NW2d 885 (1995). A gun that fired the same type of bullet that killed Lopez was found in defendant's room with one fired cartridge. Gaudard also testified that Demetrius was eliminated as a suspect in the investigation.

> Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the prosecution proved beyond a reasonable doubt that defendant was the person who shot Lopez.

> *People v. Finley*, 2016 WL 146314, at *3.

In the present case, Vianka Walton positively identified Petitioner at trial as the shooter. The Court notes that "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Brown v. Davis*, 752 F.2d 1142, 1144 (6th Cir. 1985) (internal citations omitted). Ms. Walton unequivocally identified Petitioner at trial as being the person who shot Mr. Lopez.

This evidence was sufficient to support Petitioner's convictions. *See Brown v. Burt*, 65 F. App'x 939, 944 (6th Cir. 2003).

Although Petitioner attacks the quality of the eyewitness identification, he is basically asking this Court to re-weigh the testimony and credibility of the evidence, which this Court cannot do. *See United States v. Campbell*, 18 F. App'x 355, 358 (6th Cir. 2001) (quoting *United States v. Tipton*, 11 F.3d 602, 609 (6th Cir. 1993)). This portion of Petitioner's insufficiency of evidence claim rests on an allegation of Ms. Walton's credibility, which is the province of the jury. *See Tyler v. Mitchell*, 416 F.3d 500, 505 (6th Cir. 2005).

In addition to Walton's testimony, Ms. Gallegos testified that after she heard the gunshot, she heard Walton yelling that "it was Dreads. [Petitioner's nickname]." Although Petitioner argues that this statement was inadmissible hearsay (see Claim #7, *infra*), in determining a sufficiency claim, the "'reviewing court must consider all of the evidence admitted by the trial court,' regardless of whether that evidence was admitted erroneously." *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (quoting *Lockhart v. Nelson*, 488 U.S. 33, 41 (1988)). Gallegos' statement that she heard Walton state that "it was Dreads" bolsters Walton's identification of Petitioner as the shooter.

Additional circumstantial evidence also supported the jury's verdict. Identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).

11

A defendant's erratic and suspicious behavior in the aftermath of a murder is sufficient circumstantial evidence to support a jury's finding that the defendant was the perpetrator. *See Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000). Sergeant Morgan testified that when he entered Petitioner's apartment, he was attempting to exit the apartment through a window. Petitioner's act of attempting to flee and elude the police supports his identity as the shooter.

Finally, evidence that the weapon used in the shooting was similar to the firearm that was found in Petitioner's room is sufficient circumstantial evidence to establish his identity as the shooter. *See e.g. Wiggins v. Parker*, 423 F. App'x 534, 537 (6th Cir. 2011).

To the extent that Petitioner argues that there was insufficient evidence to convict him because the police did not recover DNA evidence, fingerprints, or other forensic evidence to convict, the Sixth Circuit notes that the "lack of physical evidence does not render the evidence presented insufficient; instead it goes to weight of the evidence, not its sufficiency." *Gipson v. Sheldon*, 659 F. App'x 871, 882 (6th Cir. 2016).

Because there were multiple pieces of evidence, including eyewitness testimony, to establish Petitioner's identity as the shooter, the Michigan Court of Appeals did not unreasonably apply *Jackson v. Virginia* in rejecting Petitioner's sufficiency of evidence claim. *See e.g. Moreland v. Bradshaw*, 699 F.3d 908, 919-21 (6th Cir. 2012).

**B. Claim #2.  The autopsy photograph claim.**

Petitioner next claims that he was denied a fair trial when the prosecutor was permitted to introduce a photograph of the victim from his autopsy which shows the gunshot wound to the victim's head which Petitioner claims was "gruesome."

The Michigan Court of Appeals rejected this claim as follows:

> Exhibit 46 is arguably gruesome; it is a color photograph that shows a gunshot wound to the left side of Lopez's face and there is some blood around the wound. However, after reviewing the photograph, we agree with the trial court that the exhibit is not "excessively graphic" or "so shocking" as to shock the jury's conscious or inflame its passion. It is not beyond what one would expect to see in a murder trial where the victim was shot in the neck and face area. There was no danger that the jury would give exhibit 46 undue or preemptive weight, nor was it inequitable to allow the prosecutor to use it. The trial court's decision that the probative value of exhibit 46 was not substantially outweighed by the danger of unfair prejudice fell within the range of reasonable and principled outcomes. Therefore, the trial court did not abuse its discretion in admitting exhibit 46.

*People v. Finley*, 2016 WL 146314, at *4 (internal citations omitted).

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Errors in the application of state law, especially rulings regarding the admissibility of evidence, are

usually not questioned by a federal habeas court. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

Petitioner's claim that the trial court admitted a photograph of the murder victim fails to state a claim upon which habeas relief can be granted. *See e.g. Franklin v. Bradshaw*, 695 F.3d 439, 456-57 (6th Cir. 2012) (state court's determination, that petitioner's right to fair trial was not denied by admission of 18 gruesome autopsy photographs of his victims that were shown to jurors on large projector screen during trial for aggravated arson, aggravated robbery, and aggravated murder, was not contrary to clearly established federal law). In particular, the introduction of graphic or gruesome photographs of a murder victim does not entitle a petitioner to habeas relief where there is some legitimate evidentiary purpose for the photographs' admission. *See e.g., Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (upholding the admission of photographs depicting a victim's severed head, severed breast, and severed body parts placed near the victim's torso; the photos were highly probative of the prosecutor's claim that the petitioner beat the victim severely and meticulously dissected her body); *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003) (finding acceptable the admission of multiple photographs of the victim used by the coroner to illustrate the nature of the encounter preceding the victim's death); *Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (observing that "although the photographs were gruesome, they were highly probative.").

The Michigan Court of Appeals determined that the autopsy photograph was relevant to prove that the victim was killed by a gunshot wound and to prove that Petitioner acted with premeditation, an element of the charge of first-degree murder. *People v. Finley*, 2016 WL 146314, at *4. Because the photographs served a proper evidentiary purpose, the trial court's decision to admit them did not render Petitioner's trial fundamentally unfair or entitle him to habeas relief.

**C. Claim #3. The prosecutorial misconduct claim.**

Petitioner next claims he was deprived of a fair trial because of prosecutorial misconduct.

Respondent argues that the claim is procedurally defaulted because Petitioner failed to preserve the claim by objecting at trial.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in

15

the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Respondent contends that the third claim alleging prosecutorial misconduct is procedurally defaulted because Petitioner failed to preserve the issue by objecting at trial and as a result, the Michigan Court of Appeals reviewed the claim for plain error only. *People v. Finley*, 2016 WL 146314, at *4.

The Michigan Court of Appeals clearly indicated that by failing to object at trial, Petitioner had not preserved his prosecutorial misconduct claim. The Michigan Court of Appeals' review of Petitioner's claim for plain error should be viewed as enforcement of the procedural default. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

Petitioner has offered no reasons for his failure to preserve his third claim at the trial court level. Although ineffective assistance of counsel may constitute cause to excuse a procedural default, that claim itself must be exhausted in the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Petitioner raised several ineffective assistance of trial counsel claims on direct appeal but did not raise a claim that trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct. Because Petitioner never raised in the Michigan courts a

16

specific claim about trial counsel's failure to object to the alleged prosecutorial misconduct, any alleged ineffectiveness of counsel cannot constitute cause to excuse Petitioner's default with respect to his claim. *See Wolfe v. Bock*, 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006). Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his third claim. *Smith*, 477 U.S. at 533.

Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his third claim as a ground for a writ of habeas corpus, in spite of the procedural default. Petitioner's sufficiency of evidence claim is insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt*, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Petitioner is not entitled to relief on his procedurally defaulted claim.

### D. Claim #4. The sentencing claim.

Petitioner next argues that the judge erred in ordering the sentence on his possession with intent to deliver marijuana conviction be served consecutively to the sentences for the felony-firearm convictions.

The Michigan Court of Appeals remanded the case to the trial court so that the judgment of sentence could be corrected to reflect that Petitioner's sentence for possession with intent to deliver marijuana be

served concurrent to his felony-firearm sentences. *People v. Finley*, 2016 WL 146314, at *6.

Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This means that, throughout the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). When the issuance of a writ of habeas corpus would have no effect on a petitioner's term of custody, and would impose no collateral legal consequences, the habeas petitioner "fails to present a justiciable case or controversy within the bounds of Federal jurisdiction, under Article III." *Ayers v. Doth*, 58 F. Supp. 2d 1028, 1034 (D. Minn. 1999). [M]ootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief." *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986).

The Michigan Court of Appeals' decision to remand the matter to the trial judge to correct the judgment of sentence to run the marijuana charge concurrently with the felony-firearm sentences moots Petitioner's sentencing claim. *See e.g. Hill v. Sheets,* 409 F. App'x 821, 824-25 (6th Cir. 2010). Petitioner is not entitled to relief on this claim.

### E. Claim #5. The juror concealment claim.

As part of his fifth claim, Petitioner argues that the judge erred in failing to declare a mistrial when a juror revealed during trial that, after hearing Lopez's street name mentioned during the testimony, he realized that he was familiar with Lopez.

The Michigan Court of Appeals rejected the claim, finding it to be waived because defense counsel expressed satisfaction with the trial court's decision to excuse the juror from the jury. *People v. Finley*, 2016 WL 146314, at *6.

Waiver is an "'intentional relinquishment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A criminal defendant who has waived his rights "may not then seek appellate review of claimed deprivation of those rights, for his waiver has extinguished any error." *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996) (citing *Olano*, 507 U.S. at 733-34). *See also Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012) ("[W]aiver is a recognized, independent and adequate state law ground for refusing to review alleged trial errors."). "When one knowingly waives his charged error, that challenge is forever foreclosed, and cannot be resurrected on appeal." *Morgan v. Lafler*, 452 F. App'x 637, 646, n.3 (6th Cir. 2011) (citing *United States v. Saucedo*, 226 F.3d 782, 787 (6th Cir. 2000)).

19

The Michigan Court of Appeals found that Petitioner waived the issue because defense counsel expressed satisfaction with the judge's decision to excuse the juror rather than to declare a mistrial. A defendant in a criminal case cannot complain of error which he has invited. *Shields v. United States*, 273 U.S. 583, 586 (1927). When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error. *See Fields v. Bagley*, 275 F.3d 478, 486 (6th Cir. 2001). Petitioner is not entitled to relief on this portion of his fifth claim. The Court will address Petitioner's related ineffective assistance of counsel claim together with his other ineffective assistance of counsel claims.

### F. Claim #7. The inadmissible hearsay claim.

As part of his seventh claim, Petitioner argues that the trial court improperly admitted Ms. Gallegos' testimony concerning Ms. Walton's statement identifying petitioner as the shooter.

The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. *See Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003); *see also Rhea v. Jones*, 622 F. Supp. 2d 562, 589 (W.D. Mich. 2008); *Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002) (finding that petitioner's claim that state court erred in admitting hearsay testimony under state evidentiary rule governing declarations against penal interest not cognizable in federal habeas review, where the claim alleged a violation of state law, not a violation of

20

federal constitutional rights). The admission of this evidence in violation of Michigan's rules of evidence would not entitle Petitioner to relief.

The Michigan Court of Appeals determined that Ms. Walton's statement was admissible either under the present sense or excited utterances exceptions to the hearsay rule. *People v. Finley*, 2016 WL 146314, at *8. Petitioner's claim that the trial court improperly admitted Ms. Walton's out-of-court statement to Gallegos pursuant to the present sense impression exception to the hearsay rule is non-cognizable in federal habeas review. *See Wheeler v. Jones,* 59 F. App'x 23, 28 (6th Cir. 2003). Petitioner's claim that the trial court improperly admitted the statement to Gallegos under the excited utterance exception to the hearsay rule likewise presents a state evidentiary law issue which is not cognizable on federal habeas review. *See e.g. Smith v. Jones*, 326 F. App'x 324, 330 (6th Cir. 2009). Petitioner is not entitled to relief on this portion of his seventh claim.

### G. Claim #9. The misjoinder claim.

As part of his ninth claim, Petitioner alleges he was denied a fair trial because the judge failed to sever the marijuana charge from the murder and firearms charges.

Improper joinder does not, by itself, violate the federal constitution. *United States v. Lane*, 474 U.S. 438, 446, n.8 (1986). The Supreme Court in *Lane* suggested in passing that misjoinder could rise "to the level of a constitutional violation only if it results in prejudice so great as to deny

21

a defendant his Fifth Amendment right to a fair trial." *Id.* The Sixth Circuit noted that this language in *Lane* concerning a court's failure to sever criminal charges is simply dicta and thus not violate clearly established federal law. *See Mayfield v. Morrow*, 528 F. App'x 538, 541-42 (6th Cir. 2013). Because "'clearly established Federal law' for purposes of § 2254(d)(1) refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions[.],'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. at 412), the Sixth Circuit concluded that the habeas petitioner could not rely on *Lane* to obtain habeas relief on his claim that he had been deprived of his right to a fair trial when the judge denied his motion to sever different rape charges. *Id.*

The Ninth Circuit has likewise held that a habeas petitioner could not rely on the Supreme Court's dicta in *Lane* to obtain habeas relief on an improper misjoinder claim, particularly where that dicta was merely mentioned as a comment in a footnote of the opinion. *See Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010). Another judge in this district, in rejecting a similar claim, indicated that he had "found no Supreme Court cases holding that a defendant in a criminal case has a constitutional right to a separate trial on each of the charges against him." *Rodriguez v. Jones*, 625 F. Supp. 2d 552, 560-61 (E.D. Mich. 2009) (Rosen, J.).

Given the lack of holdings by the Supreme Court on the issue of whether a state court violates a habeas petitioner's due process rights by

joining together unrelated criminal charges in a single trial, the Michigan Court of Appeals' rejection of Petitioner's improper joinder claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006); *see also Comaduran v. Clark,* 452 F. App'x 728, 728-29 (9th Cir. 2011) (holding that California appellate court's rejection of robbery defendant's claim that trial court violated his right to due process by joining charges arising from three prior burglary-related incidents was not contrary to, nor an unreasonable application of, clearly established federal law, so as to entitle petitioner to habeas relief).

Moreover, such claims have typically been rejected by the Sixth Circuit even on direct review of federal criminal convictions. The Sixth Circuit held that to establish prejudice from joinder, a defendant must point to specific evidence that the joinder was prejudicial and "an unproven assertion is not compelling evidence of actual prejudice." *United States v. Saadey*, 393 F.3d 669, 679 (6th Cir. 2005). A jury is presumed capable of considering each criminal count separately and any prejudice arising from trial of joined offenses may be cured by limiting instructions. *United States v. Cope*, 312 F.3d 757, 781 (6th Cir. 2002). "Error based on misjoinder is almost always harmless where...the trial court issues a careful limiting instruction to the jury on the issue of possible prejudice resulting from the joinder." *United States v. Cody*, 498 F.3d 582, 587 (6th Cir. 2007).

23

"[U]nder Michigan law, severance is required only when a defendant shows that it is necessary to avoid prejudice to his substantial rights." *Clark v. McLemore*, 291 F. Supp. 2d 535, 545 (E.D. Mich. 2003) (citing M.C.R. 6.121(C)). "[T]here is no absolute right to a separate trial, and joint trials are strongly favored 'in the interest of justice, judicial economy and administration.'" *Id.* (quoting *People v. Etheridge*, 196 Mich. App. 43, 52; 492 N.W.2d 490 (1992)). Severance should only be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *People v. Hana*, 447 Mich. 325, 359-60; 524 N.W.2d 682 (1994)). Finally, under M.C.R. 6.120(B), a court must sever offenses that are not related as defined in MCR 6.120(B). MCR 6.120(B) defines related offenses that are those "based on (1) the same conduct, or (2) a series of connected acts or acts constituting part of a single scheme or plan."

In the present case, it was not fundamentally unfair to join the different charges against Petitioner in a single trial because "joinder was an efficient use of resources." *Rodriguez v. Jones*, 625 F. Supp. 2d at 561; *see also Conte v. Cardwell*, 475 F.2d 698, 700 (6th Cir. 1973) (holding that participation by state habeas corpus petitioner in successive prison riots in the same institution separated in time by less than two months were sufficient circumstances to permit joinder of offenses in an indictment

and in a trial without violation of due process.). As such, Petitioner is not entitled to relief on his misjoinder claim.

### H. Claims# 5-9. Ineffective assistance of trial counsel.

Petitioner in his fifth through ninth claims alleges he was denied the effective assistance of trial counsel.

To prevail on his ineffective assistance of counsel claims, Petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

As part of his fifth claim, Petitioner argues that trial counsel was ineffective for failing to move for a mistrial after the juror revealed that he knew the victim after hearing his nickname mentioned at trial.

The Michigan Court of Appeals rejected the claim as follows:

> A mistrial is appropriate only when the prejudice to the defendant can be removed in no other way. Once the juror disclosed that he was familiar with Lopez, the prejudice to defendant could be removed in a way other than the declaration of a mistrial: the juror could be, and was, excused from the jury. Nothing in the record indicates that the juror's familiarity with Lopez rendered the jurors who decided defendant's guilt impartial. There is no indication that the juror informed other jurors of his familiarity with Lopez, nor

25

is there any indication that the jurors ever discussed the case before deliberations began. The trial court instructed the jurors that they were not to discuss the case with each other until it was time for them to decide the case. Jurors are presumed to follow their instructions. Because any prejudice to defendant resulting from the juror's familiarity with Lopez was removed by excusing the juror from the jury, a motion for a mistrial would have been futile. Defense counsel was not ineffective for failing to make such a futile motion.

*People v. Finley*, 2016 WL 146314, at *7 (internal citations omitted).

It was reasonable for the Michigan Court of Appeals to conclude that defense counsel was not ineffective in failing to move for mistrial due to the alleged bias of this juror, where the juror was dismissed, did not take part in verdict, and there was no showing that any of the jurors who deliberated had been tainted by that juror's familiarity with the victim. *See Flake v. Winn*, No. 2:16-CV-12359, 2019 WL 3943190, at *6-7 (E.D. Mich. 2019); *see also Castellano v. United States*, 795 F. Supp. 2d 272, 281 (S.D.N.Y. 2011).

In his sixth claim, Petitioner argues that trial counsel was ineffective for failing to investigate the case.

Petitioner first claims that trial counsel was ineffective for failing to obtain a surveillance videotape that he claims would contradict Ms. Merino's testimony. The Michigan Court of Appeals rejected the claim because Petitioner failed to establish the factual predicate for his claim because he failed to show "there was any relevant video surveillance on August 23, 2013[.]" *People v. Finley*, 2016 WL 146314, at *7.

26

Although the police officers obtained video footage from nearby Howard's Party Store, both inside and outside, that captured the events of the shooting, its contents do no serve to exculpate Petitioner. Thus, Petitioner presented no evidence to either the state courts or to this Court that this or any other surveillance videotape would exculpate him.

Various eyewitness testimony reflects that the surveillance video from Howard's Party Store captured Petitioner with other men while they were in the party store. For example, Ms. Vianka Walton testified that she saw Petitioner with six other individuals in the party store. She identified the individuals with Petitioner in the Incident/Investigation Report. *See* ECF No. 1, PageID.66. Ms. Walton also testified that Petitioner's girlfriend Ciera was in the party store. ECF No. 9-6, PageID.819-20, 834-35. Walton further indicated that Petitioner and Ciera had their two kids with them in a stroller. *Id.* at PageID.833-34.

Petitioner challenges Jessica Merino's description of the shooter stating that the video would show that there was another man wearing a white shirt and with hair styled in braids, and who was "with a group of guys." *See* ECF No. 1, PageID.40. In contrast, Petitioner states that the video would show him wearing a red shirt and dreads, accompanied by a woman and children. *See id*. Ms. Vianka Walton knew Petitioner prior to this incident and testified at trial that Petitioner wore a red shirt and identified the other individuals who were at the party store. Petitioner argues that the video should have been produced to support

27

the identification given by Walton and to impeach Merino's identification. But the video is cumulative at best.

More importantly, Walton testified that Lionel Lopez and Petitioner exchanged words outside the party store before leaving. The parties then met up on the corner of Stockbridge and Race Street where a beer can hit Jacinta Gallegos, Walton's niece, in the face. This led Walton to stop her car. ECF No. 9-6, PageID.285.

Jacinta Gallegos testified that she exited the car to confront the man who threw the beer can at her. She further testified that the man proceeded to beat her and drag her across the concrete. It was then that Lionel Lopez intervened to pull the man off her by exiting Walton's car and fighting with the man. Then, Petitioner crossed the street and shot Lopez. *Id.* at PageID.286-89. Jacinta Gallegos testified that she saw Petitioner cross the street and shoot her uncle.

As another eyewitness, Jessica Merino testified that she was driving down Stockbridge on her way to a friend's house. She stopped at the four-way stop sign at Stockbridge and Race Street. A truck that had stopped in the middle of the street prevented her from going forward. She then looked over to her right and saw a group of people fighting. Within six to seven seconds, she saw Petitioner come up behind the victim and fire a gun. ECF No. 9-5, PageID.583-86.

As a third eyewitness, Anna Brabant testified that she lived in an apartment on the corner of Stockbridge and Race Street. Upon hearing

noise outside her window, she looked to see whether her car was safe. It was then that she saw four individuals fighting. Brabant testified that she saw a tall African-American male leaning over another male before she saw the first man "just kind of turned around and went like upwards on the neck of the Hispanic man and I heard the gunshot, but I couldn't see the gun." *Id*. at PageID.615.

Considering the testimony recited above, Petitioner's claim is without merit. Production of surveillance footage from the Howard Party Store could not exculpate Petitioner when the shooting occurred at a different location and where multiple eyewitness testimonies contradict his version of events. Furthermore, trial counsel used the prosecutor's failure to produce the video to create reasonable doubt.

Petitioner also argues in his sixth claim that trial counsel was ineffective for failing to present an expert in the alleged unreliability of eyewitness identification.

As an initial matter, Petitioner has presented no evidence either to the state courts or to this Court that he has an expert witness in eyewitness identification. A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006). Petitioner has offered, neither to the Michigan courts nor to this Court, any evidence that an expert witness would testify and what the content of this witness' testimony would have been. In the absence of such proof,

29

Petitioner is unable to establish that he was prejudiced by counsel's failure to call an expert witness to testify at trial on the issues surrounding eyewitness identification, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

Moreover, with respect to Petitioner's claim that counsel was ineffective for failing to call an expert on eyewitness identification, "[N]o precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011); *see also Dorch v. Smith*, 105 F. App'x 650, 653 (6th Cir. 2004) (upholding as reasonable the Michigan Court of Appeals' conclusion that defense counsel's failure to call an expert witness on eyewitness identification counsel did not satisfy *Strickland*, because counsel "presented several witnesses who testified as to [the habeas petitioner's] whereabouts on the weekend of the incident" and cross-examined the eyewitness regarding inconsistencies in his identification of the petitioner).

Furthermore, Ms. Walton and Ms. Gallegos both testified that they knew Petitioner. In light of the fact that the witnesses knew Petitioner, he has failed to show how an expert witness in eyewitness identification would have assisted his position. Petitioner has not made an affirmative showing that an expert's testimony would have likely affected the

30

outcome of his trial. *See Malcum v. Burt*, 276 F. Supp. 2d 664, 679 (E.D. Mich. 2003). Accordingly, Petitioner is not entitled to relief on his sixth claim.

As part of his seventh claim, Petitioner alleges that trial counsel was ineffective for failing to object to Ms. Gallegos' testimony that she overheard Ms. Walton state that Petitioner (i.e. Dreads) shot the victim.

The Michigan Court of Appeals rejected this claim, finding that counsel was not ineffective for failing to object because Ms. Walton's statement was admissible under either the present sense or excited utterance exceptions to Michigan's hearsay rule. *People v. Finley*, 2016 WL 146314, at *8.

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the Michigan Court of Appeals determined that Gallegos' testimony was admissible under Michigan law, this Court must defer to that determination in resolving Petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 F. App'x 431, 437-38 (6th Cir. 2008).  Because this Court "cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law," this Court is constrained to reject petitioner's claim that

counsel was ineffective for failing to object to Ms. Gallegos' testimony. *See Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005).

Petitioner in his eighth claim alleges that trial counsel was ineffective for failing to impeach Ms. Walton with a statement she allegedly made to the police that after Petitioner threw a beer can at her car, Lopez and Petitioner got into a fight and, that during this fight, Petitioner shot Lopez. The Michigan Court of Appeals rejected the claim because Petitioner failed to establish the factual predicate for the claim. *People v. Finley*, 2016 WL 146314, at *8.

Furthermore, courts generally entrust cross-examination techniques, like other matters of trial strategy, to the "professional discretion of counsel." *Dell v. Straub*, 194 F. Supp. 2d at 651. "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

Petitioner raised this claim in his pro se Standard 4 Brief on Appeal. Although Petitioner in his petition attached a copy of the police report to his petition, *See* Investigation Report (ECF No. 23), Petitioner never attached this police report to his Standard 4 Brief. ECF No. 9-10, PageID.1037-80.

The United States Supreme Court has held that habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v.*

32

*Pinholster*, 563 U.S. 170, 181 (2011). Therefore, *Cullen* precludes the Court from considering this police report in reviewing Petitioner's ineffective assistance of counsel claim under 28 U.S.C. §2254(d). *Cf. Campbell v. Bradshaw*, 674 F.3d 578, 590, n.3 (6th Cir. 2012) (declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record).

Petitioner presented no evidence to the Michigan Court of Appeals to substantiate his claim. In the absence of such evidence, the Michigan Court of Appeals did not act unreasonably in rejecting Petitioner's claim. Petitioner is not entitled to relief on his eighth claim.

More importantly, the police report that Petitioner attached to his petition indicates that Ms. Walton informed the police that petitioner was the person who threw a beer can at her car. *See* ECF No. 23.  At trial, Ms. Walton testified on cross-examination that an individual with Petitioner had thrown the beer can. *See* ECF No. 9-6, PageID.824. Defense counsel may have made a strategic decision not to impeach Ms. Walton with the police report, because doing so would have been damaging to Petitioner. Because this evidence would have been extremely damaging to Petitioner, counsel was not ineffective for failing to use it to impeach Ms. Walton. *See, e.g., United States v. Munoz*, 605 F.3d 359, 382 (6th Cir. 2010).

Finally, Petitioner in his ninth argues claim that trial counsel was ineffective for failing to move to sever the marijuana charge from the

33

murder and firearms charges. The Michigan Court of Appeals rejected this claim, finding that in light of the substantial evidence that Petitioner shot Mr. Lopez, "there is no reasonable probability that, but for defense counsel's alleged failure to move for a severance of the marijuana charge, the result of defendant's trial on the murder and weapons charges would have been different." *People v. Finley*, 2016 WL 146314, at *8.

Even if trial counsel had been deficient in failing to contest the joinder of the marijuana charge with the murder and firearms charges, Petitioner failed to show that he was prejudiced by this decision. Thus, the Michigan Court of Appeals' rejection of Petitioner's ineffective assistance of counsel claim is not so unreasonable as to justify habeas relief. *See Raver v. Brunsman*, 381 F. App'x 558, 562-63 (6th Cir. 2010).

And to the extent that Petitioner claims that trial counsel should have sought out a plea bargain on the marijuana charge, he is not entitled to relief.

The Sixth Amendment right to counsel extends to the plea bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012); *Missouri v. Frye*, 566 U.S. 134, 143-44 (2012). Thus, a criminal defendant during plea negotiations is "entitled to the effective assistance of competent counsel." *Lafler*, 566 U.S. at 162 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In the context of an ineffective assistance of counsel claim involving a defendant having rejected a plea offer from the prosecution, in order to establish that he was prejudiced by counsel's

alleged deficiency, the defendant must show that but-for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the court. Stated differently, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances. The defendant must also show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed. *Id.* at 164.

Petitioner is not entitled to relief on this claim because he has made no showing that the prosecutor was willing to offer him a plea bargain solely on the marijuana charge. The prosecutor placed on the record an offer pertaining to the other charges, which Petitioner rejected. Petitioner argues here that the marijuana charge should have been severed from the other charges because he admits guilt and would like to plead guilty to that charge. But the marijuana charge was not severed from the other charges. Petitioner chose to reject the offer and proceed to trial. Trial counsel was not ineffective for failing to obtain an offer to plead guilty to the marijuana charge when Petitioner refused to admit guilt to all of the other charges, particularly the homicide charge. As such, Petitioner is not entitled to relief on his ineffective assistance of counsel claims.

## IV. Conclusion

The Court will deny the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred

36

in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*

The Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right.

Although this Court denies a certificate of appealability, the standard for granting an application for leave to proceed in forma pauperis ("IFP") is lower than the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Id.* at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal. *Id.*

Based upon the foregoing, **IT IS ORDERED** that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE**. **IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is **GRANTED** leave to appeal *in forma pauperis*.

      **IT IS SO ORDERED**.

Dated: January 25, 2021      s/Terrence G. Berg
                                   TERRENCE G. BERG
                                   UNITED STATES DISTRICT JUDGE